NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOSEPH RISING SUN fka JOSEPH LEWIS KIRSCHE, *Appellant*.

No. 1 CA-CR 22-0371
FILED 8-22-2023

Appeal from the Superior Court in Coconino County
No. CR 2018-01083
The Honorable Fanny G. Steinlage, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Paul J. McMurdie joined.

---

**W I L L I A M S**, Judge:

¶1        Defendant Joseph Rising Sun appeals his convictions and sentences for multiple counts of sexual assault and attempted sexual assault, all dangerous crimes against children. For the following reasons, we affirm.

**BACKGROUND**

¶2        Viewed in the light most favorable to sustaining the verdicts, the trial evidence reflects the following. *See State v. Guerra,* 161 Ariz. 289, 293 (1989). In April 2018, after leaving an Easter party, Heather[1] and her children went to her boyfriend Rodney's home to spend the night. While Heather and Rodney slept in Rodney's bedroom, Heather's children, Lori and David, slept in the living room—Lori on the couch and David on the floor. Rising Sun, Rodney's roommate, stayed in a guest room.

¶3        Throughout the night, Heather awoke several times to check on Lori and David. When she looked in on the children at around 2:00 in the morning, Heather found 12-year-old Lori curled up on the couch, "shaking and crying." Heather held Lori and asked what had happened. Lori stated that "Joseph" had tried to have sex with her.

¶4        Heather immediately confronted Rising Sun, who responded "very defensive[ly]." Heather and her children then left for home. Later that morning, Heather called the police.

¶5        Detectives interviewed Heather and Lori the next day, and a nurse examined Lori. During both the interview and the nurse's examination, Lori identified Rising Sun as her assailant. When the nurse asked how she could identify him, Lori explained that she "felt" his "long hair on [her] face" and "recognized his voice." With greater detail, Lori also described the assault to the nurse, which included digital vaginal

---

[1]        Victims' and witness's names are pseudonyms. *See* Ariz. R. Sup. Ct. 111(i).

penetration, two instances of oral contact with her genitals, and two attempts at penile-vaginal penetration.

**¶6**  A few days later, police served a warrant on Rising Sun to collect a DNA sample.[2] After submitting the sample, Rising Sun traveled to Mexico for six days before returning to Arizona. Shortly after his return, Rising Sun shaved his head and then moved to his mother's home in Georgia.

**¶7**  While Rising Sun was in Georgia, his 11-year-old adopted sister, Elaine, woke their mother one evening and told her that Rising Sun had crawled into her bed, put his hand down her pants, and touched her vagina. Elaine later reported the assault to her school counselor and a family and children's services officer.

**¶8**  Meanwhile, in Arizona, the State charged Rising Sun with three counts of sexual assault, class 2 felonies and dangerous crimes against children, and two counts of attempted sexual assault, class 3 felonies and dangerous crimes against children. Before trial, the State noticed its intent to admit evidence under Arizona Rules of Evidence ("Rule") 404 concerning Rising Sun's haircut, his flight to Mexico, and the Georgia assault. Over Rising Sun's objection, the court found the evidence admissible, in part under Rule 404(b) and in part under Rule 404(c), and the case proceeded to a jury trial.

**¶9**  During opening statements, defense counsel told the jury that at the time of the purported assault in Georgia, Elaine was "angry" and "upset" with Rising Sun for moving back home. After previewing this evidence, defense counsel told the jurors: "So when closing arguments come around, I'm going to argue to you that the State hasn't proven to you by any burden of proof that the Georgia stuff even happened." In response to defense counsel's opening statement, the prosecutor later elicited testimony from Elaine's mother that Elaine "is very, very truthful."

**¶10**  The jury found Rising Sun guilty as charged. Rising Sun timely moved for a new trial, arguing that the testimony rehabilitating Elaine's character for truthfulness was inadmissible under Rule 608. The trial court denied the motion before sentencing Rising Sun to three

---

[2]  Although the nurse collected male DNA from Lori's body and clothing during the physical examination, it was of insufficient quantity to develop a full DNA profile. According to Heather's trial testimony, Lori showered before Heather called the police.

consecutive life terms of imprisonment for the sexual assault convictions and two consecutive five-year terms of imprisonment for the attempted sexual assault convictions. Rising Sun appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I.  Sufficiency of the Evidence

¶11        Rising Sun challenges the sufficiency of the evidence supporting his convictions. According to Rising Sun, Lori initially reported that Rodney had sexually assaulted her, undermining her subsequent trial testimony identifying Rising Sun as the assailant.

¶12        We review a claim of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (internal citation and quotation omitted). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). In evaluating the sufficiency of the evidence, we "do not reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact." *Borquez*, 232 Ariz. at 487, ¶ 9 (internal quotation omitted).

¶13        Contrary to Rising Sun's contention, nothing in the record suggests that Lori ever identified Rodney as her assailant. Instead, the record reflects that Lori consistently reported—and testified—that she initially assumed, when she slowly awoke to someone's hands on her feet, that Rodney or her mother were trying to wake her. But when those hands moved from her feet to under her pants, and she felt the assailant's long hair on her body, she quickly realized the individual was neither her mother nor short-haired Rodney. Lori also recognized Rising Sun's voice saying, "It's okay," during the assault, and, immediately after the assault, she identified Rising Sun's face in the dim light as he told her, "Keep this between us . . . I don't see what the problem is."[3]

---

[3]        According to the evidence, Lori responded: "I'm 12. Go find a woman that can actually do this with you."

¶14            Given this evidence, Rising Sun's sufficiency argument fails. *See State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (noting victims' credibility "is an issue to be resolved by the jury") (internal quotation and citation omitted); *State v. Godsoe*, 107 Ariz. 367, 368–69 (1971) (holding a victim's testimony, alone, can be sufficient to sustain a conviction).

## II.    Other Act Evidence

¶15            Rising Sun argues that the trial court improperly admitted other-act evidence of his haircut, his trip to Mexico, and the Georgia assault. Conceding the evidence was probative, Rising Sun contends it was unfairly prejudicial. Specifically, he claims the challenged evidence, considered together, "allowed th[e] jury to infer [guilt] solely on the basis of his [haircut and flight to Mexico] . . . and the incident in Georgia."

¶16            We review the trial court's admission of other-act evidence for an abuse of discretion. *State v. Beasley*, 205 Ariz. 334, 337, ¶ 14 (App. 2003); *State v. Garcia*, 200 Ariz. 471, 475, ¶ 25 (App. 2001). Rule 404 governs the admission of character and other-act evidence. Ariz. R. Evid. 404. Section 404(b) prohibits evidence of other crimes, wrongs or acts to prove a person's character to act in a certain way but allows such evidence for non-propensity purposes, such as showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). Before admitting other-act evidence under Rule 404(b), a trial court must find: (1) there is clear and convincing evidence the defendant committed the other act; (2) the evidence is relevant under Rule 402; (3) the evidence is offered for a proper purpose under Rule 404(b); and (4) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under Rule 403. *State v. Terrazas*, 189 Ariz. 580, 584 (1997); *State v. Mott*, 187 Ariz. 536, 545 (1997).

¶17            Rule 404(c) carves out an exception to Rule 404(b)'s general prohibition on character evidence, permitting such evidence when the defendant is charged with committing a sexual offense and the evidence is "relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c). For such evidence to be admissible, the trial court must find that: (1) sufficient evidence permits the trier of fact to find the defendant committed the other act; (2) the other act evidence provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged; and (3) the probative value of the other act is not substantially outweighed by a danger of unfair prejudice or confusion of the issues under Rule 403. Ariz. R. Evid. 404(c). When

conducting the Rule 403 analysis, the trial court shall consider, among other things, the remoteness of the other act, the similarity or dissimilarity of the other act, the frequency of the other act, the surrounding circumstances, and any relevant intervening events. Ariz. R. Evid. 404(c)(1)(C). The court also is required to make specific findings in determining the admissibility of such evidence. Ariz. R. Evid. 404(c)(1)(D).

**¶18** Concerning his haircut and trip to Mexico, Rising Sun neither contests that he committed the acts nor that they were relevant. Instead, he argues that the acts "indicated an almost certain perception of guilt, wrongdoing and attempts to flee." While likely true, Rising Sun fails to recognize that "[e]vidence of flight is admissible to show consciousness of guilt when the defendant flees 'in a manner which obviously invites suspicion . . . .'" *State v. Cota*, 229 Ariz. 136, 142, ¶ 11 (2012) (citation omitted). Equally important, Rising Sun does not explain why such an interpretation of the admittedly probative evidence was *unfairly* prejudicial and therefore inadmissible. *See State v. Schurz*, 176 Ariz. 46, 52 (1993) ("Unfair prejudice means an undue tendency to suggest decision on an improper basis, . . . such as emotion, sympathy or horror.") (internal quotations and citation omitted). On this record, the trial court did not abuse its discretion by admitting evidence of Rising Sun's haircut and trip to Mexico.

**¶19** Turning to the Georgia allegations, which were admitted under Rule 404(c), the record reflects that the court carefully considered the requisite factors and found: (1) the forensic interview of Elaine satisfied the evidentiary threshold for admitting the evidence; (2) the propensity evidence tended to prove that Rising Sun did not mistakenly engage in sexual contact with Lori; (3) though unquestionably negative, the evidence did not create an undue tendency to suggest a decision on an improper basis; and (4) the evidentiary value of the evidence, given its similarity and proximity to the charged offenses (similarly aged victims, touching the victims' genitals while they were sleeping, occurring only four months apart), outweighed the danger of unfair prejudice. The court did not abuse its discretion because the record supports these findings. *See State v. Cowles*, 207 Ariz. 8, 9, ¶ 3 (App. 2004) (explaining a court abuses its discretion when its ruling is unsupported by the record).

**¶20** Moreover, nothing in the record suggests the jury convicted Rising Sun based solely on the evidence of his haircut, flight, and assault of his sister. In fact, the trial court twice admonished the jurors, "You may not convict the defendant of the crimes charged simply because you find that he committed these acts or that he had a character trait that predisposed

him to commit the crimes charged." We presume a jury follows the trial court's instructions, and Rising Sun has not presented any evidence to overcome this presumption. *See State v. McCurdy*, 216 Ariz. 567, 574, ¶ 17 (App. 2007) (noting this court presumes jurors follow the trial court's instructions).

### III.     Motion for New Trial: Rule 608

**¶21**          Rising Sun argues that the trial court improperly denied his motion for a new trial. He contends he was entitled to a new trial because the court improperly admitted testimony of Elaine's character for truthfulness.

**¶22**          We review the denial of a motion for new trial for an abuse of discretion. *State v. Spears*, 184 Ariz. 277, 287 (1996). An exception to the general rule that evidence of a person's character or trait of character is inadmissible to prove action in conformity therewith on a particular occasion is that evidence of a witness's character may be offered as provided in, among others, Rule 608. Ariz. R. Evid. 404(a)(3). Rule 608(a), governing admissibility of a witness's character for truthfulness or untruthfulness, provides, in relevant part: "A witness's credibility may be . . . supported . . . by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."[4] Ariz. R. Evid. 608(a).

**¶23**          According to Rising Sun, defense counsel's opening statements regarding Elaine's anger toward Rising Sun and implicit suggestion that she falsely accused Rising Sun of sexual assault did not rise to an "attack" on her "character for truthfulness." Rather, Rising Sun contends that the statements only went to Elaine's motive to lie in this case, which he claims fails to justify the admission of the Rule 608(a) testimony that Elaine "is very, very truthful." Because no Arizona published opinion addresses the distinction, for Rule 608 purposes, between an attack on a witness's character for truthfulness and an allegation that a witness has a motive to lie, Rising Sun relies on caselaw from other jurisdictions to support his position. *See, e.g.*, *State v. Eugenio*, 579 N.W.2d 642 (Wis. 1998).

---

[4]      Rule 608(b) pertains to evidence of specific instances of conduct to attack or support a witness's credibility, which is not an issue in this case. *See* Ariz. R. Evid. 608(b).

**¶24**      In *Eugenio*, the Wisconsin Supreme Court applied a statute similar to but textually different from Rule 608(a). *See* 579 N.W.2d at 646, ¶ 9. In doing so, the court recognized: "An attorney may attack the veracity of a witness's statements, and the intent or motive with which the witness makes the statements, without calling into question the general character of a witness for truthfulness." *Id.* at 648, ¶ 23. Accordingly, the supreme court rejected a broad rule that would permit rehabilitating a witness under Wisconsin's statute "any time a party suggests that a witness is consciously lying." *Id.* at ¶¶ 21, 23. The supreme court continued:

> Character is evinced by a pattern of behavior or method of conduct demonstrated by an individual over the course of time. Thus, allegations of *a single instance of falsehood* cannot imply a character for untruthfulness just as demonstration of a single instance of truthfulness cannot imply the character trait of veracity. Viewing the attack on a witness in its context, the [trial] court must believe that a reasonable person would consider the attack on the witness to be an assertion that the witness is *not only lying in this instance, but is a liar generally*. Only in such circumstances will rehabilitative evidence under Wis. Stat. § 906.08(1) be appropriate. . . . [W]e reaffirm that the determination of whether the character of truthfulness of a witness is being challenged is a matter left to the proper discretion of the [trial] court."

*Id.* at 648-49, ¶¶ 24–25 (emphasis added).

**¶25**      We find *Eugenio* persuasive and apply the definition of "character" advanced by the Wisconsin Supreme Court to this case. Here, the trial court could reasonably conclude that defense counsel's opening statement did not *merely* allege Elaine had a motive to lie in this case but amounted to an attack on her character for truthfulness more generally. In other words, by stating that the Georgia assault did not "happen," defense counsel implied that Elaine not only lied four years before when she initially told her mother about the assault, but she engaged in a pattern of lying when she later reported the incident to her school counselor and a Georgia family and children's services investigator, and would continue to lie under oath at trial.

**¶26**      Because the record supports a finding that defense counsel attacked Elaine's character for truthfulness, the trial court did not abuse its discretion in denying Rising Sun's motion for a new trial.

**CONCLUSION**

**¶27**      For the foregoing reasons, we affirm Rising Sun's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA